Williams, J.
The statute under which the tax was laid, provides that: “Upon the business of trafficking in spirituous, vinous, malt or any intoxicating liquors, there shall be assessed, yearly, and shall be paid into the county treasury, ■ as hereinafter provided, by every person, corporation or co-partnership engaged therein, and for each place where such business is carried on by or for such person, corporation or co-partnership, the sum of three hundred and fifty dollars.” This is now section 4364-9 of the Revised Statutes. It is provided by section 4364-16 that: “The phrase, ‘trafficking in intoxicating liquors,’ as used in this act, means the buying or procuring- and selling of intoxicating liquors, otherwise than upon prescription issued in g-ood faith by reputable physicians in active practice, or for exclusively known mechanical, pharmaceutical or sacramental purposes, but such phrase does not include the manufacture of intoxicating liquors from the raw material, and the sale thereof at the manufactory, by the manufacturer of the same, in quantities of one gallon or more at any one time.”
One contention of the plaintiff in error is, that it is not subject to the tax authorized by the statute because the liquors sold were of its own man *514 ufacture, and the sales were made only in quantities of one gallon and upward. It is not alleged, however, nor is it claimed the sales were made at the manufactory. It appears they were not. As the statute formerly stood manufacturers were exempt from the tax without regard to the place or places where they sold their product. But since the amendment of March 21, 1887(84 O. L., 224) they are so exempt only when they confine their business to selling at the manufactory. By that amendment the words “at the manufactory” were inserted as they now appear in section 4364-16, above quoted, and they are so far restrictive of the class of exemptions from the tax as they existed prior to the amendment, that thereafter manufacturers who should engage in the business of selling their liquors elsewhere than at the manufactory, become liable to the tax like other dealers. - If that was not the purpose and effect of the amendment it had none whatever.
It is further contended, that as the beer sold was manufactured by the plaintiff, its sale did not constitute a traffic within the statutory definition. The business of trafficking in intoxicating liquors upon which the tax may be assessed, as defined by the statute, means the buying or procuring and selling of such liquors, and does not, it is claimed, include sales by the manufacturer of them, because he neither buys nor procures, but produces them. ' It seems clear, however, the word procure was not used in the statute in that restricted sense. After defining the phrase trafficking in intoxicating liquors to mean the “buying or procuring and selling,” etc., the statute, in express terms, excludes manufacturers in certain cases from the definition, which is sufficiently indicative *515 of the legislative understanding that such express exclusion was necessary to relieve manufacturers of the tax; for, if they were not within the definition, the excepting clause was unnecessary. And, moreover, the excepting clause does not exclude manufacturers in all instances, but only in cases where their sales are made at the manufactory, in quantities of one gallon or more at one time; and, it is evident this clause- would be rendered wholly nugatory if it were held the manufacturer was not within the statute because he produced the liquor sold as distinguished from procuring them; for then, he might sell anywhere and in any quantity without being liable for the tax. In general use the word procure means to obtain in any way, and that it was employed in that sense in this statute, seems clear from all of its provisions.
The remaining ground on which the validity of the tax is called in question is, that the plaintiff did not carry on the traffic at any particular place of business in Champaign county. The claim that a fixed place of business is essential to a valid imposition of the tax authorized by the statute is based on that provision which requires a tax to be paid by every person engaged in the traffic for each place where the business is carried on by or for him, and those which make the tax a lien on the real estate where the business is conducted, and authorize its collection by the enforcement of the lien or by levy on the bar fixtures, etc. The legislature, no doubt, had in view the customary mode of carrying on the traffic, in building-s and rooms, supplied with bar and other convenient fixtures and furniture, and deemed it proper to secure the tax in such cases in the manner provided. But those are not the only methods of enforcing the *516 collection of the tax; nor, is the tax limited to the traffic carried on in such places or in the ordinary-way. On the contrary, the statute imposes the tax on the business without regard to the method by which it is conducted or the situation of the seller; its purpose being- to confine the traffic to those who pay the tax. The selling of intoxicating liquors from a wagon equipped as a saloon, drawn from place to place, is as certainly within the purview of the statute, as is the traffic carried on in elegantly fitted rooms; and so is the selling from any vehicle when it is not done as part of a business on which the proprietor pays the required 'tax. But, was not the traffic carried on by the plaintiff at a place in the city of Urbana? The beer was shipped there and placed in the storage room, where it was kept on hand for sale by local agents. If customers had made their purchases or received the property at the building, it would undoubtedly have been a place of traffic. Instead of conducting the business in that way the agents who had charge of the building and contents obtained orders from the customers which they filled by hauling the beer from the building to the customers. That was merely a matter of convenience to the purchaser, or inducement to buy. The building where the property sold was situated, and from which it was delivered, was, for every practical, purpose the place where the business was carried on. The substantial distinction between this case and the cases of Hanson v. Luce and Monaghan v. Luce, 50 Ohio St., 440, is, that in the latter cases the storage room was used in connection with, and as part of the wholesale and retail traffic carried on by the proprietor at his saloon where all the business was done, and for which he had paid the tax. *517 In such a case, it was held he was not subject to a separate tax on account of the use made of the storage room. Here, the plaintiff clearly carried on a separate and independent business of trafficking in intoxicating liquors in Champaign county, for which no tax had been paid, and is liable, we think, for the tax which it seeks to have enjoined.

Judgment affirmed.